UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RELIANT CARE GROUP, LLC, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> RELIANT MANAGEMENT ) <br> GROUP, LLC, ) <br> ) <br> Defendant. ) | Case No. 4:14 CV 43 CDP |

# **MEMORANDUM AND ORDER**

This case involves the alleged infringement of a trademark. Defendant Reliant Management Group, LLC, asks that I dismiss plaintiffs' amended complaint for lack of personal jurisdiction. The defendant's website establishes sufficient contacts with Missouri, such that specific jurisdiction here is proper. The "effects" test provides an alternative reason for jurisdiction, because the effects of defendant's alleged trademark dilution are felt in Missouri. I will deny the motion to dismiss.

## **Background**[1]

This case arises from defendant's alleged unlawful use in the Missouri healthcare market of the "Reliant Care Group" trademark.[2] The mark is held by

---

[1] These facts are set out for the purpose of ruling on this motion to dismiss only, and they do not relieve any party of the burden of presenting evidence at trial.

plaintiff Reliant Care Group, LLC, and licensed to two LLCs it owns: Reliant Care Management Company and Reliant Care Rehabilitation Services (collectively the plaintiffs). Plaintiffs assert claims for federal trademark infringement, dilution, and false designation of origin under the Lanham Act,[3] violation of Missouri's anti-dilution statute,[4] and common-law trademark infringement and unfair competition. Plaintiffs seek injunctive relief to prevent further use of the term "Reliant" in Missouri, compensatory damages, lost profits, exemplary damages, costs, and attorney's fees.

Each of the plaintiffs is registered and operates in Missouri. Plaintiff Reliant Care Management manages healthcare facilities and maintains an informational website at www.ReliantCareMgmt.com.[5] Plaintiff Reliant Care Rehabilitative Services is a therapy management company specializing in skilled nursing facilities and hospital-based rehabilitation management services. It maintains a website at www.ReliantCareRehab.com. The plaintiffs have been operating in Missouri since 1994.

---

[2] RELIANT CARE GROUP, Registration No. 1,953,530.

[3] 15 U.S.C. §§ 1114(1) (a); 1125(c); 1125(a).

[4] R.S. Mo. § 417.061

[5] The website addresses in this Memorandum and Order properly consist of all lower-case letters. Capitalizations have been added for readability.

Defendant Reliant Management Group, LLC, is a limited liability company not registered in Missouri and not maintaining its principal office in Missouri.[6] It operates a website at www.Reliant-Rehab.com. Defendant began using the name "Reliant Rehabilitation" in 2003, and it registered a service mark with that phrase in 2008.[7]

Plaintiffs advertise their services and available employment positions on several websites. Plaintiffs allege that some of these websites also advertise positions with Reliant Rehabilitation in the same areas where plaintiffs operate; this has caused confusion within the rehabilitative services industry in Missouri in instances from August to October 2013.

On January 12, 2011, plaintiffs received a letter from defendant's attorney. The letter stated that defendant's services under the "RELIANT REHABILITATION" registered mark "are offered in 16 states, with Missouri soon to be added . . . ." The letter demanded that plaintiffs cease their use of the word "Reliant." Doc. 1-2. Plaintiffs responded to that letter in February 2011 with their own letter informing defendant of their own prior use of the Reliant name in Missouri since 1994. Plaintiffs now bring this suit to enforce their mark.

---

[6] Defendant's affidavit asserts that it is a Delaware company with its principal place of business in Texas, but a letter sent to plaintiff stated that it was a Louisiana LLC with its principal place of business in Louisiana.

[7] RELIANT REHABILITATION, Registration No. 3,426,134.

Defendant argues that its contacts with Missouri are insufficient to establish personal jurisdiction. It avers that never in Missouri has it: registered to do business, had an agent for service of process, had any employees, owned any real property, solicited business, had an office, transacted business, maintained records, or used its registered mark RELIANT REHABILITATION. In its reply brief, defendant adds that its "sister company Reliant Pro Rehab, LLC is licensed by Defendant to and does use the mark in Missouri." Defendant further admits that Reliant Pro Rehab has been registered to conduct business in Missouri since October 15, 2013. Defendant maintains, however, that all service contracts in Missouri are between Reliant Pro Rehab and its customers, and none includes defendant.

Plaintiffs' attorney, Lori Schmidt, submitted an affidavit stating that she telephoned the rehabilitation center at Heritage Park Skilled Care, based in Rolla, Missouri, and was told that the facility was "Reliant Rehabilitation." Schmidt also entered "Reliant," "Rehabilitation," and "Missouri" into an internet search engine. This query returned the website www.Reliant-Rehab.com/Careers; that website's "Positions Page" listed twelve employment positions available in Missouri, including ones in Ballwin and Rolla. The website also included an application that could be completed online and the contact information for a recruiter whose territory included Missouri. The "About Us" page for the website stated,

"WELCOME TO RELIANT MANAGEMENT GROUP, L.L.C. ('Reliant Rehabilitation') WEB SITE . . . . This Site is controlled by RELIANT MANAGEMENT GROUP L.L.C. from its office within the state of Louisiana." Doc. 9-2 at pp. B-10 to B-11.

## **Legal Standard**

It does not appear that the Court of Appeals for the Federal Circuit has ever held that personal jurisdiction in a trademark case should be governed by Federal Circuit law rather than the law of the regional circuit. I will therefore apply Eighth Circuit standards to the jurisdictional question presented here.

Rule 12(b) (2) of the Federal Rules of Civil Procedure authorizes a pre-answer motion to dismiss, such as was filed here, for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b) (2). When a defendant challenges the existence of personal jurisdiction, the plaintiff ultimately has the burden of proving the existence of jurisdiction by a preponderance of the evidence. *See Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 646–47 (8th Cir. 2003). However, when the court evaluates a Rule 12(b) (2) motion after some jurisdictional discovery but without an evidentiary hearing to resolve disputed issues of fact, the plaintiff generally needs only to make a prima facie showing that jurisdiction exists. *See Epps*, 327 F.3d at 646–47 (8th Cir. 2003) ("While the plaintiffs bear the ultimate burden of

proof, jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing.").

Here, the jurisdictional facts are disputed and there has been no evidentiary hearing, so the prima facie standard applies. When applying the prima facie standard, the court must accept the uncontroverted allegations in the plaintiff's complaint as true and must resolve any factual conflicts in the evidence in the plaintiff's favor. *K–V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011).

## **Analysis**

Where a federal court's subject-matter jurisdiction arises from the existence of a federal question, the court may exercise jurisdiction over a defendant only if: (1) the plaintiff properly served the defendant with process under the forum state's long-arm statute; and (2) the defendant has sufficient contacts with the forum state to satisfy the Constitution's due process requirements. *See Enter. Rent-A-Car Co. v. U-Haul Int'l, Inc.*, 327 F. Supp. 2d 1032, 1036 (E.D. Mo. 2004) (citing *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104–05 (1987). Although courts have often collapsed the statutory and constitutional questions into a single inquiry, "[t]he inquiries . . . are separate." *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir. 2012) (citing *Bryant v. Smith Interior Design Group, Inc.*, 310 S.W.3d 227, 231–32 (Mo. banc 2010)).

## A. Long-Arm Statute

Missouri's long-arm statute authorizes personal jurisdiction over a defendant who commits a tort within the state. R.S. Mo. § 506.500.1. "These individual categories are construed broadly, such that if a defendant commits one of the acts specified in the long-arm statute, the statute will be interpreted 'to provide for jurisdiction, within the specific categories enumerated in the statute, to the full extent permitted by the Due Process Clause.'" *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011) (quoting *State ex rel. Metal Serv. Ctr. of Ga., Inc. v. Gaertner*, 677 S.W.2d 325, 327 (Mo. banc 1984)).

Missouri's long-arm statute covers extraterritorial tortious acts that yield consequences in Missouri. *Bryant*, 310 S.W.3d at 232. Trademark infringement is a tort. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1388 (8th Cir. 1991). Plaintiffs have made a prima facie showing that defendant committed the tort of trademark infringement, the effects of which are felt in Missouri, by using part of the "Reliant Care Group" mark on its interactive website www.Reliant-Rehab.com. *See id.* (holding trademark infringement arises in the state of the mark's owner). Defendant's alleged acts fall within conduct specified in Missouri's long-arm statute. *See Enter. Rent-A-Car*, 327 F. Supp. 2d at 1043. I

now turn to consider whether asserting personal jurisdiction over the defendant comports with due process.

**B.     Due Process**

To satisfy due process, a plaintiff must show that there are "minimum contacts" between the forum state and the defendant. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Assuming there are "minimum contacts," the court must consider whether the exercise of personal jurisdiction over the defendant is counter to the "traditional notion of fair play and substantial justice." *Id.* The underlying inquiry under the "minimum contacts" standard is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287 (1980). "Actions by [the defendant] itself must have created a 'substantial connection' with the forum." *Bell Paper Box, Inc. v. Trans W. Polymers, Inc.*, 53 F.3d 920, 922 (8th Cir. 1995) (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220 (1957)).

Personal jurisdiction can be either general or specific, depending upon the nature of the contacts that the defendant has with the forum state. *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). "'Specific jurisdiction refers to jurisdiction over causes of action arising from or relating to a defendant's actions within the forum state,' while '[g]eneral jurisdiction . . . refers to the power

of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose.'" *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994) (alterations in original) (quoting *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1392 (8th Cir. 1993). As to specific jurisdiction, "due process is satisfied if the defendant has purposely directed its activities at forum residents, and the litigation results from injuries arising out of, or relating to, those activities." *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1103 (8th Cir. 1996) (citation omitted).

Because this is a federal question case, the Court examines due process under the Fifth Amendment rather than the Fourteenth Amendment. *See Dakota*, 946 F.2d at 1389 n.2 (employing the same test for minimum contacts). The Eighth Circuit has set forth a five-factor test for evaluating the propriety of jurisdiction under the Due Process Clause, and has stated that the first three factors bear greatest weight:

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

*Trans W. Polymers, Inc.*, 53 F.3d at 922 (citations omitted). Once the Court has found the requisite minimum contacts, it must still determine whether the exercise of jurisdiction comports with "fair play and substantial justice." *Int'l Shoe*, 326

U.S. at 320. That is, if it would be unreasonable for the forum to assert jurisdiction under all the facts and circumstances – despite a finding that defendant has the requisite minimum contacts – due process requires that jurisdiction be denied. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477–78 (1985).

The Eighth Circuit has held that a company's website can provide sufficient contacts to invoke specific jurisdiction. *See, e.g.*, *Lakin v. Prudential Secs., Inc.*, 348 F.3d 704, 711 (8th Cir. 2003). That court adopted the sliding-scale "*Zippo* test" set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). "At a minimum, in a specific jurisdiction case we will consider . . . two of the primary factors – 'the nature and quality of the contacts and [their] source and connection' to 'the cause of action.' In such a case, the *Zippo* test would function appropriately." *Lakin*, 348 F.3d at 712 (alteration in original) (quoting *U.S. Kids, Inc.*, 22 F.3d at 819). On the side of the scale where jurisdiction is presumed are websites that allow the defendant to "enter[] into contracts with residents of the foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet." *Id.* at 710 (quoting *Zippo*, 952 F. Supp. at 1124). On the other side of the scale, where no jurisdictional presumption exists, are websites that do little more than passively provide information. *Id.* The middle is occupied by interactive websites, where the user can exchange information. *Id.* at 711. No jurisdictional presumption

attaches there; rather, the quality of the contacts at that level must be determined "by examining the level of interactivity and commercial nature of the exchange of information that occurs" on the website. *Id.*

The defendant's site allows users to interact by searching for open employment positions and to submit applications for those positions by providing the user's contact information, salary requirements, and reasons for the job search, and by uploading a digital copy of the applicant's résumé. However, nothing in the affidavits provided shows that users of the website can directly enter into contracts with defendant. The defendant's website falls under the middle category, and thus it must be evaluated to determine whether the contacts with Missouri are sufficient to assert personal jurisdiction.

In *Lakin*, the Eighth Circuit applied the *Zippo* test as part of its inquiry into whether the defendant's banking website could provide sufficient contacts to justify an assertion of general jurisdiction. 348 F.3d at 712. The court placed the website into the middle *Zippo* category after noting that the website allowed consumers to establish secure online accounts, exchange email, and – "[m]ore importantly" – complete online loan applications, to which the defendant would respond within five business days. *Id.* That court found that because these contacts were available on a 24-hour basis, they were "continuous and systematic to a degree that traditional foreign corporations can never even approach." *Id.*

(internal quotation marks omitted) (citing *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 513 (D.C. Cir. 2002)). The court ultimately reversed the district court's dismissal of the case and remanded for further jurisdictional discovery. *Id.*

Here, the defendant's contacts are integrally related to the plaintiffs' causes of action. Plaintiffs' complaint asserts confusion regarding available employment positions as one of the manifestations of harm stemming from the dilution of their mark. Defendant's website uses the names "Reliant Rehabilitation" and "Reliant Management Group" and advertises positions for employment in Missouri. The relation factor weighs heavily in favor of jurisdiction.

The website allows job seekers to search for and apply for positions with defendant; this process requires the transmittal of a résumé, among other information. The website further states that upon completion of the application, a recruiter will contact the applicant "shortly." The quality of the contacts here are similar to those in *Lakin*, and so the factor weighs in favor of jurisdiction.

Plaintiffs have provided evidence that defendant has used its website to post twelve positions for employment in five different Missouri cities. These postings occurred over a three-month period. The quantity factor favors jurisdiction.

I now turn to the lesser factors. Missouri obviously has an interest in providing a judicial forum for its resident LLCs, and so the fourth factor favors jurisdiction. *See K-V Pharm.*, 648 F.3d at 595. The fifth factor, however, is

neutral: The parties operate in different states, and so their relative levels of convenience and inconvenience are offset. *See id.*

Two of the most important factors weigh heavily in favor of jurisdiction, the third favors of jurisdiction, and one of the lesser factors supports jurisdiction. The remaining less-important factor is neutral. Plaintiffs have established that defendant has the requisite minimum contacts with Missouri.

As a separate ground for jurisdiction, plaintiffs contend that the "effects" test confers personal jurisdiction in this court because defendant intended that the effects of their trademark use be felt in Missouri. *See Dakota*, 946 F.2d at 1390–91.

The United States Supreme Court, in *Calder v. Jones*, 465 U.S. 783 (1984), adopted the "effects" test, which allows a state to confer personal jurisdiction over a non-resident whose acts "are performed for the very purpose of having their consequences felt in the forum state." *Dakota*, 946 F.2d at 1390–91 (quoting *Brainerd v. Governors of the Univ. of Alta.*, 873 F.2d 1257, 1260 (9th Cir. 1989)). *Calder* involved the publication of an allegedly libelous newspaper article. 465 U.S. at 784–85. The Supreme Court found that the editor and reporter knew their conduct would have a "potentially devastating impact" on the plaintiff, that the "brunt of the injury would be felt" in the forum state where the plaintiff lived and worked and where the defendants' product had the largest circulation. 465 U.S. at

789–90.  Further, the Court made "a sharp distinction between 'mere untargeted negligence' and 'intentional, and allegedly tortious, actions' aimed expressly at the forum state."  *Dakota*, 946 F.2d at 1390 (citing *Calder*, 465 U.S. at 789).

Viewing the facts in the light most favorable to plaintiffs, defendant committed an intentional tort of infringement.  Defendant sent a letter to plaintiffs, informing them of its intent to use the Reliant Rehabilitation mark in Missouri.  Plaintiffs' response warned that they had a superior claim on the mark.  Nevertheless, defendant used the mark in Missouri.  Defendant's trademark infringement can easily be interpreted as being purposefully aimed at the state in which the holder has its principal place of business.  *See Anheuser-Busch, Inc. v. City Merch.*, 176 F. Supp. 2d 951, 959 (E.D. Mo. 2001).  Likewise, the "brunt" of the injury is felt in Missouri, as the trademark infringed upon is owned by Reliant Care Group, LLC, a company based in and operating out of Missouri.  *See id.*  Jurisdiction is proper in Missouri under the "effects" test.

Finally, under the circumstances of this case, traditional notions of "fair play and substantial justice" would not be compromised by this court exercising jurisdiction over defendant.  *See Burger King*, 471 U.S at 476–78. Considerations include "the burden on defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of

controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* at 477 (internal quotation marks omitted) (citing *World-Wide Volkswagen*, 444 U.S. at 292). The State of Missouri has an interest in resolving this case and determining whether a Missouri company's trademark is being infringed in violation of its common law and federal statutes. Plaintiffs likewise have a strong interest in adjudicating this action in Missouri. Defendant has not shown that it is so burdened by defending itself in this forum that traditional notions of fair play and substantial justice are implicated.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss for lack of personal jurisdiction [# 7] is **denied**.

**IT IS FURTHER ORDERED** that defendant's motion for limited/special appearance [# 6] is **denied as moot**.

This case will be set for a Rule 16 Scheduling Conference by separate order.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 19th day of November, 2014.